IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

   vs.                                                              Cr. No. 13-4064 JCH

ISAAC ALVARADO and
TRAVIS NAU,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      This matter is before the Court on the following motions: (I) *Motion for Production of Alleged Co-Conspirator Statements and Pre-Trial Hearing on Their Admissibility Pursuant to Fed. R. Evid. 801(d)(2)(E)* [Doc. 93]; (II) *Motion for a Bill of Particulars as to Travis Nau, Disclosure of Early Jencks Act Material, Brady and Giglio Material* [Doc. 92]; and (III) Motions relating to Defendants' suppression motion, previously decided but not formally ruled on: *Defendants' Joint Motion To Exclude Government's Late-Disclosed Discovery and Continue the Motion Hearing Set for April 22, 2014* [Doc. 48], *Government's Motion To Exclude the Testimony of Edward D. Baca* [Doc. 46], and *Government's Motion To Exclude the Testimony of Defendants' Witnesses* [Doc. 69].

      The Court has reviewed the motions, briefs, and relevant law. The Court concludes that the motion regarding alleged co-conspirator statements should be denied as moot with regard to the request for production, but granted as to the request for pretrial hearing; the Court will set a pretrial hearing. The Court concludes that the motion for a bill of particulars and early

disclosure of Jencks Act, *Brady*, and *Giglio* material should be denied. The Court now enters a formal ruling on three motions previously decided: denying Defendants' motion to exclude late-disclosed discovery from an April 22, 2014 hearing which was continued; and denying the Government's two motions to exclude testimony of witnesses from the September 16, 2014 evidentiary hearing on Defendants' suppression motion.

## BACKGROUND

Defendant Isaac Alvarado is a retired Colonel in the New Mexico Army National Guard, who served as a Recruiting Assistant for the Guard Recruiting Assistant Program ("G-RAP"). G-RAP was a program designed to increase enlistment in the Army National Guard, paying referral bonuses for each civilian recruited. The National Guard Bureau hired a civilian corporation, Docupak, to oversee day-to-day operations of the G-RAP program.

Defendant Travis Nau, Alvarado's son-in-law and a Sergeant First Class in the New Mexico Army National Guard, was employed as an assistant in the Recruit and Retention Office of the Guard Armory in Albuquerque. Nau was responsible for helping persons enlist in the National Guard, and had access to the names and personal information of potential recruits. As a paid recruiter, Nau was not eligible to participate in G-RAP.

According to the indictment, Defendants used information about enlistees obtained by Nau in the course of his employment and made entries into Alvarado's online G-RAP account fraudulently showing that Alvarado had recruited the enlistees. [Doc. 2] Between February 2008 and February 2012, Defendants are alleged to have defrauded the United States of about $12,000. Nau is alleged to have instructed some enlistees to falsely state, in the event of an inquiry, that they had been recruited by Alvarado.

Both Defendants were indicted on seven counts:  Count 1—Conspiracy to commit wire fraud, contrary to 18 U.S.C. § 371 and 18 U.S.C. § 1343; Counts 2, 4, 5—Wire fraud, contrary to 18 U.S.C. § 1343 and 18 U.S.C. § 2; and Counts 6, 8, 9—Aggravated identity theft, contrary to 18 U.S.C. § 1028A(a)(1) and 18 U.S.C. § 2.  [Doc. 2]  Alvarado was indicted on one additional count of Wire fraud, Count 3, and one additional count of Aggravated identity theft, Count 7.  [Doc. 2]

**(I)**  *Motion for Production of Alleged Co-Conspirator Statements and Pre-Trial Hearing on Their Admissibility Pursuant to Fed. R. Evid. 801(d)(2)(E)* **[Doc. 93]**

Defendant Nau asks the Court to order the Government to produce alleged co-conspirator statements which the Government may seek to introduce under Federal Rule of Evidence 801(d)(2)(E). [Doc. 93]  The Government filed a response in which the Government avers that it has already produced to Nau's counsel in discovery any known co-conspirator statements which the Government would potentially seek to introduce at trial.  [Doc. 102, p. 1]  The Government states that the number of co-conspirator statements is small, and that "nearly all" could be admitted under other rules of evidence; many of the statements would not be offered for their truth, while some would be admissible as statements of a party-opponent under Rule 801(d)(2)(A).  [Doc. 102, pp. 1, 6]  Nau filed no reply.  Based on the Government's affirmation, the Court will deny as moot the portion of Nau's motion requesting production of co-conspirator statements.

Since the Government's response shows that at least some statements would be offered as co-conspirator statements, the Court deems it advisable to set a pretrial hearing on admissibility.  The Court grants Nau's request for a pretrial hearing, which will be set in a later order.

**(II)** *Motion for a Bill of Particulars as to Travis Nau, Disclosure of Early Jencks Act Material, Brady and Giglio Material* **[Doc. 92]**

### A. Bill of Particulars

An indictment is required to be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). "'An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense.'" *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)). Setting forth the offense in the words of the statute is generally sufficient, provided that the elements of the offense are stated. *United States v. Bedonie*, 913 F.2d 782, 791 (10th Cir. 1990). "An indictment need not go further and allege 'in detail the factual proof that will be relied upon to support the charges.'" *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (quoting *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978)).

The purpose of a bill of particulars is to inform the defendants of the charges against them "with sufficient precision" to allow them to prepare their defense. *United States v. Levine*, 983 F.2d 165, 166-67 (10th Cir. 1992) (internal quotation marks omitted). The decision of whether to grant a motion for a bill of particulars is left to the discretion of the district court. *Id.* at 166.

A bill of particulars is not warranted if the indictment is sufficient—i.e., if "'the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial.'" *Id.* at 167 (quoting *Dunn*, 841 F.2d at 1030). Emphasizing the distinction between "evidence" and "theory," the Tenth Circuit stated: "Since the defendant is not entitled to know all the *evidence* the government intends to produce, but

4

only the *theory* of the government's case, the district court [does] not abuse its discretion in denying defendant's motion for a bill of particulars where defendant has been served with a sufficient indictment." *Id.* (internal quotation marks omitted).

Federal Rule of Criminal Procedure 7(f) allows a defendant to move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits." The Court notes that this motion was filed late. The Indictment was issued December 17, 2013, and Defendant was arraigned on January 9, 2014. Although current counsel for Nau was not appointed until May 2, 2014, the motion for bill of particulars was not filed until December 28, 2014. [Docs. 55, 92]

Defendant Nau argues that the Indictment fails to specify the acts Nau allegedly committed and fails to disclose the theory of the case. [Doc. 92, pp. 3-6] Nau acknowledges that the Indictment alleges he provided information to Alvarado, but argues it does not show how he conspired to defraud, particularly since there is no evidence Nau derived financial benefit or aided Alvarado in submitting recruits' information to Docupak.

The Court concludes that the Indictment is sufficient, because it tracks the language of the statutes and states the elements of the offenses. *See Bedonie*, 913 F.2d at 791.

To convict Nau of conspiracy under 18 U.S.C. § 371, the Government must prove that Nau conspired to commit an offense against the United States and that: (1) Defendant agreed with at least one other person to violate the law; (2) one of the conspirators engaged in at least one overt act furthering the conspiracy's objective; (3) Defendant knew the essential objective of the conspiracy; (4) Defendant knowingly and voluntarily participated; and (5) there was interdependence among the members of the conspiracy. *See Tenth Circuit Pattern Criminal Jury Instructions* § 2.19; *United States v. Rahseparian*, 231 F.3d 1267, 1272 (10th Cir. 2000).

5

To convict Nau of wire fraud under 18 U.S.C. § 1343, the Government must prove "(1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of interstate wire or radio communications to execute the scheme." *United States v. Gordon*, 710 F.3d 1124, 1147 (10th Cir. 2013) (internal quotation marks omitted); *see United States v. Gallant*, 537 F.3d 1202, 1228 (10th Cir. 2008). "'A scheme to defraud focuses on the intended end result and affirmative misrepresentations are not essential; by contrast a scheme to obtain money by false pretenses, representations or promises focuses instead on the means by which the money is obtained and particular false pretenses, representations or promises must be proved.'" *Gallant*, 537 F.3d at 1228 (quoting *United States v. Cochran*, 109 F.3d 660, 664 (10th Cir. 1997)). The latter alternative requires proof of false pretenses, representations, or promises, which must also be proved to be "material." *United States v. Battles*, 745 F.3d 436, 454 (10th Cir. 2014); *see Neder v. United States*, 527 U.S. 1, 25 (1999) (holding that false representations must be material); *Use Note to Pattern Crim. Jury Instr.* § 2.57 (2011).

To convict Nau of aggravated identity theft under 18 U.S.C. § 1028A, the Government must prove that:  (1) Nau knowingly transferred, possessed, or used, without lawful authority, a means of identification of another person; (2) Nau knew that the means of identification belonged to another person; and (3) that Nau did so during and in relation to the felony of wire fraud.  *See Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009); *United States v. Grajeda-Gutierrez*, 372 Fed. Appx. 890, 893 (10th Cir. 2010).

The Indictment alleges that:  Nau provided Alvarado with recruits' personal information (obtained through Nau's position in the recruiting office) to enable Alvarado to claim fraudulent bonuses; Alvarado and Nau transmitted the personal identifiers of others to Docupak under false

claims that Alvarado was responsible for recruiting them; Alvarado and Nau knowingly possessed and used means of identification of other persons; and on at least two occasions Nau instructed recruits to falsely claim that Alvarado sent them to the recruiting office. [Doc. 2, ¶¶ 3, 7, 8(a), 9(b), 9(e), 12, 15] In addition, the Indictment includes approximate dates for alleged wire transmissions and use of other persons' means of identification. [Doc. 2, ¶¶ 9, 11-13, 15] *See Dunn*, 841 F.2d at 1029.

The Court concludes that the Indictment gives Nau sufficient notice of the charges to enable him to prepare a defense. The Indictment tracks the language of the statutes on conspiracy, wire fraud, and aggravated identity theft, and sets forth the elements of the offenses. *See Bedonie*, 913 F.2d at 791. In addition, the Government has provided Nau with what Nau acknowledges is "voluminous discovery," including witness statements, interview reports, G-RAP materials, and financial records. [Doc. 92, p. 2; Doc. 100, p. 8] When discovery supplies the information necessary to allow the defendants to prepare their defense, a bill of particulars is not warranted. *United States v. Ivy*, 83 F.3d 1266, 1282 (10th Cir. 1996) (holding that discovery gave defendant tools necessary to prepare defense, and rejecting conclusory allegations of prejudice).

Nau argues that the Indictment "lists several 'overt acts,'" but "fails to specify the evidence [Nau] intentionally and knowingly defrauded the United States," fails to show "how the alleged conduct comprising the overt acts proves voluntary and intentional violations of the law," and "fails to provide, with particularity, details regarding the evidence against Mr. Nau." [Doc. 92, pp. 2, 5] But Nau is "not entitled to notice of all of the *evidence* the government intends to produce," but is only entitled to notice of "the *theory* of the government's case." *Ivy*, 83 F.3d at 1281; *see Dunn*, 841 F.2d at 1029 (stating that indictment need not "allege in detail the factual

proof that will be relied upon to support the charges" (internal quotation marks omitted)). To the extent Nau's argument requests evidence to show his intent, such "*evidence*" is not required. In addition, direct evidence of a defendant's intent is rarely available; intent may be proved by inference from circumstances and objective acts. *United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001); *see United States v. Bailey*, 327 F.3d 1131, 1140 (10th Cir. 2003) (observing that it is difficult to prove intent to defraud from direct evidence, but intent may be proved by inference); *United States v. Prows*, 118 F.3d 686, 692 (10th Cir. 1997) (stating that intent to defraud for wire fraud offense is usually proved by inference from circumstantial evidence); *United States v. Sivigliano*, 550 Fed. Appx. 537, 539 (10th Cir. 2013) (unpublished) (stating that intent to defraud may be inferred).

Nau's reply argues: "The crux of Mr. Nau's argument for a bill of particulars rests on the fact that the voluminous discovery disclosed by the Government consists mainly of bank documents pertaining to the codefendant, Mr. Alvarado and hundreds if not thousands of emails"; and that, order to prepare a defense, Nau requires "direction and specificity" and "a means of precise information with regard to the charges against Mr. Nau." [Doc. 104, p. 2] A very similar argument was rejected by the Tenth Circuit. In *Ivy*, the defendants contended that their motion for a bill of particulars should have been granted because of the wide or unclear time frames in the indictment and copious discovery, together with the government's failure to identify which parts of the discovery clarified dates or reduced the time span. *Ivy*, 83 F.3d at 1281-82. The Tenth Circuit affirmed denial of a bill of particulars, holding that the discovery gave the defendants "the tools necessary to anticipate and forestall any surprise that might have resulted from the indictment," and it was the defendants' "responsibility to use [those tools] in preparing their defense, regardless of whether the discovery was copious and the preparation of

the defense was difficult." *Id*. at 1282.  As in *Ivy*, Nau's argument does not justify an order for a bill of particulars.

The Court concludes that the Indictment gives Nau sufficient notice of the Government's theory of the case, and that a bill of particulars is not warranted.

**B.  Early disclosure of Jencks Act material**

Nau asks the Court to order early disclosure of Jencks Act material by the Government. [Doc. 92, pp. 6-7]  *See* 18 U.S.C. § 3500 (witness statement required to be produced *after* witness testifies on direct).  The only justification given by Nau is a general assertion that early disclosure would help expedite the proceedings by avoiding recesses and continuances that might be necessary to allow Defendants time to examine the statements and prepare.  Nau suggests that if testimony is expected to last at least two weeks, avoidance of delay becomes more important.

The Government opposes Nau's request for a court order for pretrial disclosure, when the material is not required to be produced until trial.  [Doc. 100, pp. 1, 10-11]  The Government also states that it has already provided Defendants with "virtually all of the interview reports and statements relating to potential trial witnesses," and commits to producing "any additional Jencks Act materials which may be found to exist or are created hereafter to the defendant in advance of trial."  [Doc. 100, p. 10]

Nau's reply asserts that the Government has not yet produced the grand jury transcript and could "pick and choose" what to disclose early.  [Doc. 104, pp. 4-5]

Since, under these circumstances, Nau provides no adequate justification for an order requiring early disclosure, the Court will deny Nau's motion with respect to this issue.

9

### C. Early disclosure of *Brady/Giglio* material

Nau requests production—"far in advance of trial"—of all evidence falling within *Brady* and *Giglio*. [Doc. 92, pp. 8-10]  The Government responds that it has already provided such material, and if the Government becomes aware of any other such material, it will promptly provide it to Defendants. [Doc. 100, pp. 11-12]  The Government opposes "any request for discovery or disclosure that exceeds the requirements of *Brady* and *Giglio*," and asks the Court to deny Nau's motion because the Government is complying with its obligations under *Brady* and *Giglio*.

Since, under these circumstances, Nau provides no justification for a court order, the Court will deny Nau's motion with respect to this issue.

### III. Motions relating to Defendants' suppression motion

So that the docket includes written rulings on motions previously ruled on orally, the Court here enters formal rulings on three motions directed at the September 16, 2014 evidentiary hearing on Defendants' *Motion To Suppress Evidence Collected by U.S.C. Title 10 Active Duty Army Investigators.* [Doc. 22]

### A. *Defendants' Joint Motion To Exclude Government's Late-Disclosed Discovery and Continue the Motion Hearing Set for April 22, 2014* [Doc. 48]

The evidentiary hearing on Defendants' *Motion To Suppress Evidence Collected by U.S.C. Title 10 Active Duty Army Investigators* [Doc. 22] had been set for April 22, 2014. The Court previously granted Defendants' motion to continue that hearing. [Doc. 50 (filed 4/22/14)] Defendants also requested the Court to exclude consideration at that April 22, 2014 hearing of discovery provided by the Government on April 17, 2014, on the ground that Defendants needed additional time (a minimum of thirty days) to review this discovery before the evidentiary

10

hearing.  [Doc. 48, pp. 3, 6-7]  Granting a continuance of the April 22, 2014 evidentiary hearing rendered moot Defendants' motion for exclusion; Defendants had ample time to review the additional discovery before the evidentiary hearing—which was not held until September 16, 2014.

The Court has already granted the motion to the extent that it requested a continuance of the April 22, 2014 evidentiary hearing.  The Court will now deny as moot the request to exclude "late-disclosed discovery" from the suppression hearing.

**B.**  *Government's Motion To Exclude the Testimony of Edward D. Baca* **[Doc. 46], and** *Government's Motion To Exclude the Testimony of Defendants' Witnesses*  **[Doc. 69]**

For the evidentiary hearing on their *Motion To Suppress Evidence Collected by U.S.C. Title 10 Active Duty Army Investigators* [Doc. 22], Defendants filed a notice of intent to offer expert testimony by Lt. Gen. Ret. Edward Baca [Doc. 39], and a witness list showing three additional witnesses:  Jason Riley, Mario Tafoya, and Henry Garcia Salas [Doc. 68].  The Government filed two motions to exclude all four of Defendants' witnesses from testifying at the evidentiary hearing.  [Docs. 46, 69]  Defendants filed responses.  [Docs. 47, 70]

The Government argued that the testimony of Defendants' witnesses would be irrelevant and would encroach on the province of the Court to decide legal questions.  Defendants responded that the defense included a contention that there were widespread and repeated violations of the Posse Comitatus Act, and that defense witnesses had information relevant to that contention. [Doc. 70, pp. 3-4]

The principle that the rules of evidence do not "'operate with full force'" at pretrial suppression hearings is "based on the assumption that more evidence should be included in a pretrial hearing because the judge, unlike a jury, can give the evidence 'such weight as his

11

judgment and experience counsel.'" *United States v. Conner*, 699 F.3d 1225, 1227-28 (10th Cir. 2012) (quoting *United States v. Matlock*, 415 U.S. 164, 172-73 (1974)). The Court's decision to hear the testimony of Defendants' witnesses, and give it such weight as it merited, is fully consistent with these principles. The Court was not constrained by Rules of Evidence 402 and 403. And the Court's ability to fulfill its function of deciding legal questions was not impaired by hearing the testimony of Defendants' witnesses.

The Government also argued that Baca was insufficiently qualified to testify as an expert. [Doc. 46, p. 6] Baca testified about the differences between Title 10 and Title 32 personnel and the relationships between the National Guard of the United States, United States Army, and New Mexico National Guard. Even if the rules of evidence were applicable, the Court had "broad discretion" in assessing Baca's qualifications and the reliability of his testimony. *See Attorney General v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009); *United States v. Gomez*, 67 F.3d 1515, 1525-26 (10th Cir. 1995) (stating that Rule 702 sets liberal standard for qualification as expert). Baca's testimony primarily provided background information that was of some assistance to the Court. *See Robinson v. Geico Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (stating that expert testimony is admissible under Rule 702 if it advances trier of fact's understanding "to any degree"). Since Rule 702 was not applicable, the Court had broader discretion to admit evidence and give it the weight it merited. The Court determined that Baca had sufficient knowledge and experience to warrant hearing his testimony. In addition, there was no concern about any unreliable evidence reaching a jury. *See Tyson Foods, Inc.*, 565 F.3d at 779.

After reviewing the motions, briefs, and applicable law, the Court orally denied these motions at the September 16, 2014 evidentiary hearing. [Tr. 9-16-14, pp. 6-7] The Court ruled

that, since there was no jury present, the Court would hear the testimony and give it whatever weight was appropriate, ignoring testimony that was unhelpful or unreliable. The Court now enters a formal order denying the Government's motions to exclude the testimony of Defendants' four witnesses from the suppression hearing.

**IT IS THEREFORE ORDERED** that:

(1) Defendant Nau's *Motion for Production of Alleged Co-Conspirator Statements and Pre-Trial Hearing on Their Admissibility Pursuant to Fed. R. Evid. 801(d)(2)(E)* [Doc. 93] is **DENIED IN PART AS MOOT** and **GRANTED IN PART**, as discussed above;

(2) Defendant Nau's *Motion for a Bill of Particulars as to Travis Nau, Disclosure of Early Jencks Act Material, Brady and Giglio Material* [Doc. 92] is **DENIED**;

(3) *Defendants' Joint Motion To Exclude Government's Late-Disclosed Discovery and Continue the Motion Hearing Set for April 22, 2014* [Doc. 48] is **DENIED IN PART AS MOOT** and **GRANTED IN PART**, as discussed above;

(4) *Government's Motion To Exclude the Testimony of Edward D. Baca* [Doc. 46] is **DENIED**; and

(5) *Government's Motion To Exclude the Testimony of Defendants' Witnesses* [Doc. 69] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**